IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 9, 2016

**FREDERICK E. BRAXTON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2009-C-2845   Mark J. Fishburn, Judge**

**No. M2016-00161-CCA-R3-PC – Filed August 31, 2016**

The Petitioner, Frederick E. Braxton, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his 2010 convictions for selling less than 0.5 gram of cocaine within 1000 feet of a school zone, evading arrest, and criminal impersonation and his effective fifteen-year sentence.  The Petitioner contends that he received the ineffective assistance of counsel.  We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and J. ROSS DYER, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Frederick E. Braxton.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Victory S. (Torry) Johnson III, District Attorney General; and Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the Petitioner's selling cocaine to undercover police officers. The Petitioner appealed his convictions, and in its opinion affirming the convictions, this court summarized the facts as follows:

> At trial, Detective Matthew Atnip of the Metro Nashville Police Department recalled the events leading to Appellant's arrest.  In October of 2007, Detective Atnip was assigned to the Hermitage Crime Suppression Unit. Detective Atnip was working with Detective Josh Walters on an undercover

"buy bust operation" that targeted street-level drug dealers. The two detectives wore plain clothes and traveled in the area around Murfreesboro Road in an undercover vehicle. Several other members of the Crime Suppression Unit assisted in the operation.

On October 8, 2007, Detective Atnip drove the undercover vehicle to a Mapco gas station at the corner of Murfreesboro Road and Thompson Lane. He saw Appellant walking either to or from a Cadillac. Detective Walters asked Appellant if he had any "work," a slang term for drugs. Appellant stated that he did not have any drugs. At that time, the undercover officers drove away, heading down Murfreesboro Road toward downtown.

Detective Atnip next pulled into another gas station on Murfreesboro Road near Spence Lane and the Waffle House. The vehicle was backed into the parking space near the pay phone. A few minutes later, Appellant pulled up next to them in his vehicle and asked the men what they needed. Detective Walters told Appellant that they wanted a "40" of crack cocaine. Appellant told the men it was "hot," meaning that there were police in the area, and asked them to follow him down the road. The detectives followed Appellant in his car to the intersection of Blanton and Hill Avenues. Detective Atnip pulled his car next to Appellant's car.

Appellant asked the men if they were police officers. The detectives denied being police officers. According to the detectives, Appellant handed Detective Walters three or four loose rocks of crack cocaine. Detective Walters tried to hand Appellant the forty dollars for the drugs; Appellant told him to throw it to the ground. Detective Walters complied. Detective Atnip drove away from the scene, giving the takedown signal to the other officers involved in the operation. By the time the officers approached with lights and sirens, Appellant had turned his car around so that he could pick up the money. Appellant took off, "squealing his tires" and heading toward Hill Avenue. Appellant was surrounded and taken into custody. Detective James Anthony King, who was also a part of the investigation, recalled that the arrest of Appellant took place near the intersection of Blanton and Hill Avenue, near Murfreesboro Road.

Appellant gave his name as "Frederick Jones" and "Frederick Brown" when he was read his *Miranda* rights. Detective Walters thought that Appellant was actually "booked" as "Frederick Brown." At some point during the arrest, Appellant stated that he "just f[ ] up" and should "lay down" and go

-2-

to "jail." Following the arrest, Detective Atnip went to the location of the drug purchase and recovered a bag that contained a large white rock. The substance tested field positive for cocaine. . . .

. . . The contents of the bag were later tested by TBI scientist Ella Carpenter . . . . Ms. Carpenter analyzed a sealed plastic bag that contained 2.8 grams of cocaine. She did not test the additional amount of cocaine in the bag because it was not enough to increase the penalty. In other words, the amount of cocaine was less than twenty-six grams, the statutory threshold for a greater penalty. The report indicated that "[n]o analysis was performed on additional rock-like substance. The gross weight of this additional rock-like substance is 3.4 grams.[1] The total[] weight for all the rock-like substances would not exceed 26 grams." Ms. Carpenter tested the substance and determined that it was, indeed, crack cocaine, weighing 2.8 grams.

In May of 2009, the district attorney's office requested that the remainder of the substance be tested by the TBI. . . . The remaining substance was also determined to be cocaine, weighing .4 grams. . . .

. . . .

David Kline, the manager of the mapping division for Metropolitan Planning Department, prepared a map of the area in anticipation of trial. The map outlined an area 1000 feet around the Nashville School of the Arts. According to the map, the intersection of Blanton Avenue and Hill Avenue was within 1000 feet of the property of Nashville School of the Arts. In fact, the intersection is 822 feet away from the property line of the school.

Appellant took the stand in his own defense. He described himself as an "entertainer" trying to break into the music industry. On October 8, 2007, Appellant was at the Mapco Station to meet a friend, Pamela Sircy. Appellant was going to give Ms. Sircy a CD so that she could pass it along to her "connections" on Music Row.

Appellant testified that he went into the store to buy some items for Ms. Sircy when he noticed a new Mustang vehicle outside. He saw two men inside the car. They asked him for "something." Appellant claimed that he told the men to go away, and he walked to his car. Appellant could sense that the men

_____

[1] This includes the weight of the packaging. Ms. Carpenter later explained that the gross weight of the cocaine was 3.2 grams.

-3-

were police officers. Appellant insisted that he did not sell drugs and had no drugs on him that night.

Appellant told the men to go away when they asked him for drugs a second time. Appellant testified that at some point, he heard a CB radio go off inside the Mustang. Appellant claimed that he knew the men were police.

Appellant left the gas station in his car. He claimed that the Mustang was following him. Appellant planned to get on the interstate when a car cut in front of him. Appellant kept going straight and tried to perform a U-turn. Appellant saw a "No U-turn" sign, so he turned on Blanton Avenue. When he drove down the street to turn around, the Mustang pulled in front of him and two other cars activated their blue lights, blocking him . . . on the street. Appellant claimed that the police jumped out of their cars with their guns drawn and that he did not make it to the intersection of Blanton and Hill before this happened.

According to Appellant, the police never asked his name. They made him get out of the car, searched him, and cuffed him. Appellant claimed that the police told him to "shut up" when he asked what was going on that night. Appellant insisted that he did not give a false name to police, instead he told them that his identification was inside his pocket. Appellant admitted that he used the alias Frederick Frank Brown when he was a teenager but claimed that he has not used it since. Additionally, Appellant admitted that he was driving on a suspended license.

*State v. Frederick Edward Braxton*, No. M2010-01998-CCA-R3-CD, 2011 WL 5573357, at *1-3 (Tenn. Crim. App. Nov. 15, 2011), *perm. app. denied* (Tenn. Apr. 12, 2012).

On March 26, 2012, the Petitioner filed the instant petition for post-conviction relief alleging multiple grounds of the ineffective assistance of counsel. The Petitioner's sole contention on appeal is that trial counsel provided ineffective assistance by failing to present a material witness who would have supported his claim of innocence. Our recitation of the evidence presented at the post-conviction hearing is limited to this issue.

At the post-conviction hearing, trial counsel testified that she and co-counsel represented the Petitioner. Counsel said that she had practiced criminal law for thirty years and that she had tried between thirty and fifty jury trials. She said that she began working on the Petitioner's case in the beginning of 2010, after a colleague left the public defender's office. She said that she examined the discovery, spoke with an investigator, determined

what pretrial motions needed to be filed, met with the Defendant four or five times, and prepared an opening statement, witness cross-examinations, and a closing argument to prepare for the trial.

Trial counsel testified that during her meetings with the Petitioner, they discussed the facts of the case, reviewed the charges and possible punishments, obtained the Petitioner's input, and prepared him for the trial. She said they discussed the possible defenses and the benefits and pitfalls of the Petitioner's testifying. She noted that the jury acquitted the Petitioner of the Class A felony drug charge. She said that before the trial, she investigated Pamela Jenkins and that she prepared "an examination" but could not recall whether Ms. Jenkins testified.

On cross-examination, trial counsel testified that her meetings with the Petitioner were usually two hours. She thought she began representing the Petitioner about six months before the trial. She said that she and the Petitioner spoke about various things the Petitioner wanted investigated and that she took photographs of the scene and presented the photographs at the trial.

Trial counsel testified that she did not personally meet with Ms. Jenkins before the trial but that her office investigated Ms. Jenkins. Counsel said that her file indicated she prepared questions to ask Ms. Jenkins, leading counsel to believe that she had expected Ms. Jenkins to testify at the trial. Counsel's file did not indicate whether someone interviewed Ms. Jenkins. She did not recall what, if anything, the Petitioner said about Ms. Jenkins. Counsel was unsure whether someone interviewed Ms. Jenkins.

Trial counsel testified that the Petitioner was involved in his case, that he expressed his opinions, and that they discussed trial strategy at length. Although she did not recall the details of their discussions, she recalled discussing the case extensively.

Pamela Jenkins testified that she was incarcerated for especially aggravated robbery at the time of the post-conviction hearing and that she had known the Petitioner for about ten years. She said that she and the Petitioner were together when the Petitioner was arrested but that nobody from the district attorney's office or the public defender's office contacted her. She recalled the Petitioner's driving her red, two-door Cadillac but said later, though, that the Cadillac belonged to her uncle.

Ms. Jenkins testified that before the Petitioner's trial, she spoke to the Petitioner's attorney on the telephone, that Ms. Jenkins told the attorney what occurred, and that the attorney told Ms. Jenkins that Ms. Jenkins could not testify because of her background. Ms. Jenkins did not know the attorney's name. Ms. Jenkins said that on the night of the offense,

the Petitioner was driving her car, that she called the Petitioner and requested he pick her up from a friend's home, that the Petitioner picked her up, and that they were driving to meet a woman regarding the Petitioner's music. Ms. Jenkins said the Petitioner stopped at a convenience store at Ms. Jenkins's request, that they went inside and purchased items, and that when they returned to her car, she saw two undercover police officers walking toward the Petitioner. Ms. Jenkins heard the officers ask the Petitioner if the Petitioner knew where they could find drugs. Ms. Jenkins said that the Petitioner told the officers he did not know where to find drugs but that the officers harassed the Petitioner about where to find drugs. Ms. Jenkins said that she heard the officers' radios, that she and the Petitioner were getting ready to leave, and that she asked the Petitioner if he was okay. Ms. Jenkins said the Petitioner told her that his driver's license "was messed up." She said that she and the Petitioner got inside her car, that the officers stopped them from leaving, and that the officers harassed the Petitioner, threw him on the ground, and took him to jail. She said later, though, that they drove about three blocks before the police stopped them. She denied the Petitioner was speeding or attempting to "chase away."

Ms. Jenkins testified that when the officers stopped them three blocks from the convenience store, they asked the Petitioner to get out of the car and asked for permission to search the car. Ms. Jenkins said that the Petitioner became angry and that the officers asked the Petitioner what was his "problem." She said the officers searched the car and arrested the Petitioner. She said neither she nor the Petitioner consented to a search of the car. She did not know what, if anything, the police found during the search. She said the officers flirted with her and asked what she "had on."

On cross-examination, Ms. Jenkins testified that at the time of the Petitioner's arrest, she went by the name Pamela Searcy and that she had been previously convicted of theft and attempted alteration of a vehicle license plate. She said the Petitioner was never outside her presence between the Petitioner's picking her up and the Petitioner's arrest. She said that the Petitioner was arrested near the convenience store on Murfreesboro Road. She said she was sitting in the front passenger seat of the car. She denied she saw the Petitioner make a hand-to-hand drug deal and said she did not see the Petitioner throw drugs on the ground.

Ms. Jenkins testified that she did not know the Petitioner testified at his trial that he was alone at the time of his arrest. She said she and the Petitioner had been good friends at the time of the Petitioner's arrest, that they had not remained good friends, and that she last saw the Petitioner in 2008. She said that she did not speak to the officers, other than when they flirted with her.

The Petitioner testified that he pleaded guilty in two or three previous cases because he was guilty of the charges and that he went to trial in two cases because he was not guilty. Relative to co-counsel, the Petitioner said he met with her once for about thirty minutes just before the trial regarding a twenty-year plea offer from the prosecutor. The Petitioner said he rejected the offer because he was not guilty.

The Petitioner testified that he met with trial counsel twice before the trial, that the second meeting was the day before the trial, and that the meeting was less than one hour. He said that he did most of the talking, that counsel said she would "do all this," and that counsel did not do anything before the trial.

The Petitioner testified that he told trial counsel about Ms. Jenkins, that he thought counsel and co-counsel had interviewed Ms. Jenkins before the trial, and that he thought counsel intended to present Ms. Jenkins as a trial witness. The Petitioner said that when he realized Ms. Jenkins was not going to testify, counsel told him that Ms. Jenkins's testimony was not needed. The Petitioner did not understand. The Petitioner said that counsel told him that counsel had interviewed Ms. Jenkins and that a few months before the trial, counsel thought Ms. Jenkins would be a good witness.

The Petitioner testified that he was released on bond at the time of his arrest. He said that he knew the people at the convenience store were police officers and that he initially laughed at the officers when they stopped him a few blocks away from the store.

On cross-examination, the Petitioner testified that he did not ask Ms. Jenkins to leave after their first encounter with the police officers at the convenience store. The Petitioner agreed that he provided details about the events during his trial testimony. He agreed that he was on bond for attempt to commit first degree murder at the time of his arrest and that he was ultimately convicted of attempted second degree murder. He agreed his previous convictions placed him in a higher offender classification, which resulted in a longer sentence in the present case. He agreed he had previous convictions for possession with the intent to sell less than 0.5 gram of cocaine, unlawful possession of a handgun, and voluntary manslaughter.

The Petitioner stated that he chose to testify at the trial and that the jury credited the police officers' testimony. He said that he and trial counsel discussed the possible defenses and that he received the State's discovery package.

On redirect examination, the Petitioner testified that he did not speed as he and Ms. Jenkins drove away from the convenience store, that he wore a seatbelt, and that he looked both ways before driving onto the roadway. He admitted he had a suspended license at the

time of his arrest. He said that when the police officers stopped the car, the officers did not request his license and that the officers pulled him out of the car. He believed Ms. Jenkins' testimony would have resulted in the jury's acquitting him of all charges.

The post-conviction court denied relief. The court acknowledged the merits of the Petitioner's complaint that trial counsel dismissed Ms. Jenkins from testifying at the trial without consulting him. The court found that counsel should have discussed dismissing Ms. Jenkins with the Petitioner before Ms. Jenkins was released. The court found, though, that Ms. Jenkins did not provide testimony at the post-conviction hearing that would have called into question the validity of the jury's verdicts. The court found that although Ms. Jenkins corroborated the Petitioner's testimony regarding his initial encounter with the police, Ms. Jenkins was not present to add any insight into the actual events that led to the drug transaction that might have resulted in a different verdict. The court found that although corroborative evidence was generally relevant and material, the absence of Ms. Jenkins's testimony did not rise to the level of deficient performance because her corroborative evidence related to undisputed facts.

The post-conviction court found that counsel made a strategic and tactical decision not to call Ms. Jenkins as a witness, that counsel pursued a legitimate defense strategy based upon adequate preparation, and that counsel communicated properly with the Petitioner. The court determined that the Petitioner failed to establish by clear and convincing evidence that counsel's performance was deficient or that the Petitioner was prejudiced by counsel's performance. This appeal followed.

The Petitioner contends that trial counsel provided ineffective assistance by failing to present Ms. Jenkins as a trial witness. He argues that Ms. Jenkins's testimony was critical because she was the only witness to the Petitioner's encounter with the police. He argues that because the Petitioner's defense was actual innocence, Ms. Jenkins's testimony would have corroborated the Petitioner's testimony that he did not sell cocaine to the officers.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Generally, presenting a witness at the post-conviction hearing "is the only way the petitioner can establish that the failure to . . . call the witness . . . resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). When the basis for an ineffective assistance claim is trial counsel's failure to present a witness, the post-conviction court "must determine whether the testimony would have been (1) admissible at trial and (2) material to the defense." *Pylant*, 263 S.W.3d at 869. If the witness's testimony would have been admissible and material to the defense, the post-conviction court must determine the credibility of the witness. *Id*. at 870.

The record reflects that although trial counsel could not recall whether Ms. Jenkins testified at the Petitioner's trial, she recalled that before the trial, her office investigated Ms. Jenkins and that counsel prepared questions in the event Ms. Jenkins testified. Although counsel could not recall whether she spoke to Ms. Jenkins personally, Ms. Jenkins testified that she spoke to the Petitioner's attorney on the telephone, that Ms. Jenkins told the attorney what occurred when the Petitioner was arrested, and that the attorney told Ms. Jenkins that Ms. Jenkins's background prevented counsel from presenting Ms. Jenkins as a trial witness. Ms. Jenkins testified that she had previous convictions for theft and attempted alteration of a vehicle license plate, crimes involving dishonesty, and that at the time of the post-conviction hearing, Ms. Jenkins was serving a sentence for especially aggravated robbery. In this regard, the record does not preponderate against the post-conviction court's findings that counsel made a strategic and tactical decision not to present Ms. Jenkins as a trial witness and that counsel was not deficient by failing to present Ms. Jenkins.

Furthermore, the record reflects significant inconsistencies between the Petitioner's trial testimony and Ms. Jenkins's post-conviction hearing testimony. Ms. Jenkins provided testimony that was somewhat consistent with the Petitioner's trial testimony regarding the initial interaction with the police officers at the convenience store. However, Ms. Jenkins testified that the Petitioner was driving her car and that the Petitioner picked her up from a friend's home before driving to the store. Likewise, she initially testified that after the first interaction with the police, the officers stopped them from leaving the store and that the officers harassed the Petitioner, threw him on the ground, and took him to jail. She later said, though, those events occurred three blocks away from the store. In any event, Ms. Jenkins said that when the officers stopped the car a short distance from the store, the officers asked the Petitioner to get out of the car and for permission to search the car. She said although nobody consented to a search of the car, the officers searched the car and arrested the Petitioner.

In contrast, the Petitioner testified at the trial that he met Ms. Jenkins at the convenience store, not that he picked her up from a friend's home. Furthermore, the Petitioner said that after the first interaction with the police officers, the Petitioner gave Ms. Jenkins the items he had purchased inside the store. The Petitioner said that Ms. Jenkins "got in her car" and asked, "Do you need me to follow you?" The Petitioner told Ms. Jenkins following him was unnecessary and said that Ms. Jenkins "pulled off and went the opposite way from downtown" and that he got in his car and began traveling toward downtown.

Therefore, Ms. Jenkins's post-conviction hearing testimony that she and the Petitioner were together when the police stopped the car a short distance from the convenience store was inconsistent with the Petitioner's trial testimony. According to the Petitioner's trial testimony, he was alone at the time of his arrest because he and Ms. Jenkins were driving separate vehicles and traveled in different directions from the store. We note that the officers did not testify at the trial about Ms. Jenkins being present at the time of the Petitioner's arrest. As a result, the Petitioner has failed to establish that the outcome of the trial would have been different had Ms. Jenkins testified at the trial.

We conclude that the record does not preponderate against the post-conviction court's findings that counsel did not provide deficient performance and that the Petitioner failed to establish he was prejudiced by any deficiency.

Based upon the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE